[No. 75151-0. En Banc.]
Argued February 10, 2005.    Decided October 6, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. JOE N. LOUIS, *Petitioner*.

*Cheryl D. Aza* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Dennis J. Mc-Curdy, Deputy,* for respondent.

¶1 ALEXANDER, C.J. — We granted Joe Louis's petition for review to determine whether his convictions for first degree robbery and first degree kidnapping violate principles of double jeopardy and, alternatively, whether his kidnapping convictions merge into his robbery convictions. We also granted Louis's supplemental petition to determine whether his consecutive sentences for kidnapping are unconstitutional in light of *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). For reasons set forth herein, we answer "no" to each of the aforementioned questions. Accordingly, we affirm Louis's convictions and sentences.

## I

¶2 Under a pretext of shopping, Lisa Leighton and John Rucker entered a jewelry store that was owned by a husband and wife, Chol Yang and Sun Whang. Joe Louis, who had initially remained outside of the store, entered after the last customer had departed. Upon entering, Louis locked the outside door and proceeded to conceal his face with a stocking. At that point, Rucker drew a gun and aimed it at Whang. Louis then jumped over the counter and led Whang into a bathroom. Meanwhile, Rucker led Yang to the rear of the store, where he took Yang's wallet and keys. He then took Yang into the same bathroom in which Whang was being detained. Louis and Rucker proceeded to cover the couple's eyes and mouths with duct tape. They also bound the couple's hands and feet and warned them that if

they left the bathroom, they would be killed. Yang and Whang waited a few minutes before freeing themselves. They then summoned the police. Louis, Rucker, and Leighton were subsequently arrested.

¶3 The King County prosecuting attorney charged Louis with first degree robbery of Whang (count IV) and Yang (count V), and first degree kidnapping of Whang (count VI) and Yang (count VII). Clerk's Papers at 9-11.[1] The information contained an allegation that Louis was armed with a firearm during the commission of each of the aforementioned offenses. The jury found Louis guilty of the charges in counts IV, V, VI, and VII. It also returned a special verdict that Louis was armed with a firearm during the commission of each kidnapping and robbery.

¶4 The sentencing court imposed a standard range sentence of 54 months imprisonment on each count. It determined, however, that the robbery charge embodied in count IV encompassed the same criminal conduct as that alleged in the kidnapping charge set forth in count VI. It, therefore, ordered that the sentence on count IV run concurrently with the sentence on count VI. It made the same determination regarding counts V and VII. The sentencing court also determined that the kidnapping convictions should run consecutively to each other based on the fact that kidnapping is a serious violent offense and that kidnapping two different individuals constitutes separate and distinct criminal conduct for purposes of RCW 9.94A.589(1)(b).[2] Finally, it imposed a mandatory 60-month firearm enhance-

---

[1] The charges contained in counts I, II, III, and VIII of the information relate only to codefendants Rucker and Leighton.

[2] "Whenever a person is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct, the standard sentence range for the offense with the highest seriousness level under RCW 9.94A.515 shall be determined using the offender's prior convictions and other current convictions that are not serious violent offenses in the offender score and the standard sentence range for other serious violent offenses shall be determined by using an offender score of zero. The standard sentence range for any offenses that are not serious violent offenses shall be determined according to (a) of this subsection. All sentences imposed under (b) of this subsection shall be served consecutively to each other and concurrently with sentences imposed under (a) of this subsection." RCW 9.94A.589(1)(b).

ment on each count, with two enhancements running concurrently with the robbery convictions and two enhancements running consecutively with the kidnapping convictions. The addition of firearm enhancements of 120 months resulted in a total sentence for Louis of 228 months in prison.

¶5 The Court of Appeals affirmed Louis's convictions and sentences. Louis then sought review by this court, raising a double jeopardy issue, as well as other arguments. While Louis's petition for review was pending, the United States Supreme Court rendered its decision in *Blakely*, 542 U.S. 296. Louis then filed a supplemental petition for review, seeking to add an argument that his consecutive sentences ran afoul of the decision in *Blakely*. We granted review on only the double jeopardy, merger, and *Blakely* issues.

## II

### A. Double Jeopardy

¶6 Louis contends that his convictions for first degree robbery and first degree kidnapping constitute multiple punishments for the same offense and violate the double jeopardy prohibitions of the federal and state constitutions. He claims, therefore, that two of his convictions must be vacated.[3]

¶7 The fifth amendment to the United States Constitution assures that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, article I, section 9 of the Washington Constitution, guarantees that "[n]o person shall be . . . twice put in jeopardy for the same offense." These provisions afford persons a constitutional guaranty against multiple punishments for the same offense. Beyond these constitutional constraints, "the legislative branch has the power to define criminal conduct and assign punishment for such conduct."

---

[3] Louis does not identify which convictions should be vacated. *See* Suppl. Br. of Pet'r at 6-13.

*State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (citing *Whalen v. United States*, 445 U.S. 684, 689, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)). Our review here is limited to determining whether the legislature intended to allow multiple punishments for criminal conduct that violates both the robbery and kidnapping statutes.

¶8 Initially, we look to the language of the pertinent statutes to determine if they expressly authorize multiple punishments for conduct that violates more than one statute. Where, as here, the language of the statutes are silent on this point,[4] we apply a rule of statutory construction known as the " 'same evidence' " test. *Id*. at 777. Under the same evidence test, double jeopardy is deemed violated if a defendant is "convicted of offenses that are identical both in fact and in law." *Id*. (citations omitted). If each offense requires proof of an element not required in the other, where proof of one does not necessarily prove the other, the offenses are not the same and multiple convictions are permitted. Our "same evidence" test mirrors its federal counterpart, the "same elements" test or *Blockburger* test, as adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) and *State v. Gocken*, 127 Wn.2d 95, 101-02, 896 P.2d 1267 (1995).

¶9 Applying the same evidence test here, we conclude that the robbery and kidnapping charges against Louis are not the same "in law." We reach that conclusion because each offense includes an element not included in the other. As we previously observed in two cases that are similar to the one before us, "[i]n order to prove robbery, the State [is required to] prove a taking of [personal] property, which is not an element of kidnapping," while kidnapping requires the State to prove "the use or threatened use of 'deadly force,' " which is not an element of robbery. *State v. Vladovic*, 99 Wn.2d 413, 423-24, 662 P.2d 853 (1983); *see also In re Pers. Restraint of Fletcher*, 113 Wn.2d 42, 50, 776

---

[4] *See* RCW 9A.56.190 (defining "robbery"); RCW 9A.56.200 (first degree robbery); RCW 9A.40.010(1)-(2) (defining "restrain" and "abduct"); RCW 9A.40.020 (first degree kidnapping).

P.2d 114 (1989) ("[K]idnapping and robbery charges are not the same offense.").

¶10 Moreover, we note, as did the Court of Appeals, that Louis's robbery and kidnapping charges were not the same factually: "The robbery necessitated the intentional taking of jewelry at gunpoint, while the kidnapping charge was based on Louis's binding and gagging the victims with duct tape to facilitate commission of the robbery." *State v. Louis*, noted at 119 Wn. App. 1080, 2004 Wash. App. LEXIS 52, at *6 (2004).

¶11 Although the result of the same evidence test creates a strong presumption of the legislature's intent, it is "not always dispositive of the question whether two offenses are the same." *Calle*, 125 Wn.2d at 780. This presumption can "be overcome only by clear evidence of contrary [legislative] intent." *Id.* Louis fails, however, to set forth any legislative history of the robbery and kidnapping statutes that clearly shows the legislature sought to provide a single punishment for violating both statutes. Accordingly, we hold that the charges are not the same in fact or law and that double jeopardy principles do not preclude separate convictions for robbery and kidnapping.

## B. Merger Doctrine

¶12 Louis argues, alternatively, that his kidnapping charges should merge into his robbery charges. He reasons that a kidnapping will always be simultaneous and incidental to armed robbery. Although he acknowledges that this court has rejected an identical argument in *Vladovic*, he urges us to overrule that decision and adopt the "kidnapping merger" rule. Suppl. Br. of Pet'r at 16-18.

■ ■ ¶13 The merger doctrine is a tool of statutory construction "used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions." *Vladovic*, 99 Wn.2d at 419 n.2 (citing *Blockburger*, 284 U.S. 299). As we noted there, the merger doctrine applies only where

the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping).

*Id.* at 421.

¶14 We see no reason to depart from our decisions in *Vladovic* and *Fletcher*. In *Vladovic*, the defendant was convicted of attempted first degree robbery, first degree robbery, and four counts of first degree kidnapping. We concluded that "kidnapping does not merge into first degree robbery" because proof of kidnapping is not necessary in order to prove robbery. *Id.* at 421. In *Fletcher*, the defendant pleaded guilty to first degree kidnapping, first degree robbery, and first degree assault. We held there that the merger doctrine did not apply to first degree kidnapping and first degree robbery because a "person who intentionally abducts another need do so only with the *intent* to carry out one of the incidents enumerated in RCW 9A-.40.020(1)(a) through (e) inclusive"; not that the person actually complete the action. *Fletcher*, 113 Wn.2d at 53.

¶15 As neither statute has been changed in any significant way since we rendered our decisions in *Vladovic* and *Fletcher*,[5] we can conclude only that the legislature has not indicated that a defendant must commit kidnapping before he or she can be found guilty of first degree robbery or commit armed robbery before he or she can be convicted of first degree kidnapping. Thus, we adhere to our decisions in *Vladovic* and *Fletcher* and hold that Louis may be punished separately for robbery and kidnapping.

## C. *Blakely* and Consecutive Sentences

¶16 Lastly, Louis contends that the trial court's imposition of consecutive sentences for his kidnapping

---

[5] In 2002 the legislature amended RCW 9A.56.200 to add a provision relating to "robbery within . . . a financial institution." Laws of 2002, ch. 85, § 1; *see also* RCW 9A.56.200(1)(b).

convictions violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process of law. This is so, he submits, because the jury did not determine that the convictions arose from separate and distinct criminal conduct. He relies on the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 491-92, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely*, 542 U.S. at 305, in support of his contentions.

¶17 We recently addressed the precise issue that Louis raises in *State v. Cubias*, 155 Wn.2d 549, 120 P.3d 929 (2005). We indicated there that the principle set forth in *Apprendi* and *Blakely* has no application to consecutive sentencing decisions so long as each individual sentence remains within the statutory maximum for that particular offense, as is the case here. *Cubias*, 155 Wn.2d at 554. We are not inclined to depart from our decision in *Cubias* and, therefore, affirm the trial court's decision that the kidnapping sentences imposed on Louis run consecutively.[6]

### III

¶18 In sum, we conclude that Louis's convictions for first degree robbery and first degree kidnapping do not constitute multiple punishments for the same offense and thereby violate double jeopardy. We also conclude that the convictions do not merge. Finally, we conclude that the United States Supreme Court decisions in *Apprendi*, *Blakely*, and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) have no bearing on a trial court's imposition of consecutive sentences for kidnapping. We affirm the Court of Appeals.

BRIDGE, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶19 MADSEN, J. (concurring in part, dissenting in part) — Although I concur with the result reached in this case, I

---

[6] Following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), we asked the parties for supplemental briefing on whether *Booker* affects the Supreme Court's analysis in *Blakely*. *See* Second Suppl. Br. of Pet'r; Second Suppl. Br. of Resp't. We are of the opinion that *Booker* does not change *Blakely*'s analysis.

must disagree with the reasoning as presented in *State v. Cubias,* 155 Wn.2d 549, 120 P.3d 929 (2005). The facts of this case and *Cubias* are functionally identical, and my reasons for dissenting have not changed. In *Cubias,* the petitioner was convicted by a jury of three counts of attempted murder[7] against three separate victims. This finding permitted the trial judge to determine that petitioner's conduct was "separate and distinct" as a matter of law, *In re Personal Restraint of Orange,* 152 Wn.2d 795, 821, 100 P.3d 291 (2004) (holding separate victims creates presumption that conduct is "separate and distinct"), thereby permitting the trial judge to run the sentences consecutively under RCW 9.94A.589(1)(b).

¶20 Similarly, the petitioner in this case, Joe Louis, was convicted by a jury of two counts of first degree kidnapping, also a "serious violent offense," with respect to two separate victims. Thus, the trial judge found Louis' conduct to constitute "separate and distinct criminal conduct" and properly imposed consecutive sentences for the two first degree kidnapping counts pursuant to RCW 9.94A.589(1)(b).

¶21 Louis' sentence should be affirmed.

C. JOHNSON, SANDERS, and CHAMBERS, JJ., concur with MADSEN, J.

Reconsideration denied January 3, 2006.

---

[7] Attempted murder is a "serious violent offense."