FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 MAR -5 AM 8: 46

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 75759-8-I |
| Respondent, | |
| v. | DIVISION ONE |
| JUAN JOSE RODRIGUEZ-MONTOYA, | UNPUBLISHED OPINION |
| Appellant. | FILED: March 5, 2018 |

LEACH, J. — Juan Jose Rodriguez-Montoya appeals his convictions for rape of a child in the first degree and two counts of child molestation in the first degree for the rape and molestation of F.M-G. and the molestation of R.A.L. He relies on his constitutional guaranty against double jeopardy to challenge the convictions for rape and molestation of F.M-G. under instructions that did not require that the jury base its decisions on separate and distinct acts. He also claims that the court should not have admitted R.A.L.'s out-of-court statement to her pediatrician because R.A.L. did not make her statement about the abuse and her abuser's identity for purposes of medical diagnosis or treatment.

The record shows that it was manifestly apparent to the jury that the State based the rape and molestation charges involving F.M-G. on separate and distinct acts. Second, evidence about an abuser's identity is reasonably necessary to a child's treatment and the totality of the circumstances corroborates R.A.L.'s statement, making it admissible under ER 803(a)(4). We affirm.

## BACKGROUND

From the age of six, F.M-G. attended day care at "Patty's," a neighbor's apartment. Patty's husband, Rodriguez-Montoya, also lived at the apartment. In February 2014, seven-year-old F.M-G. told his mother that he did not want to return to Patty's because Rodriguez-Montoya had made him touch Rodriguez-Montoya's "parts." F.M-G. disclosed to a child interview specialist that Rodriguez-Montoya had put his penis into F.M-G.'s bottom, touched F.M-G.'s penis, made F.M-G. touch his own penis, and made F.M-G perform oral sex.

Four-year-old R.A.L. also attended Patty's day care. In November 2014, R.A.L. told her mother that Rodriguez-Montoya had touched her inappropriately. R.A.L.'s mother took her to see her pediatrician, Dr. Margarita Guerra. R.A.L. disclosed that Rodriguez-Montoya had touched her private parts and made her touch his. Guerra testified about R.A.L.'s statement at trial.

A jury convicted Rodriguez-Montoya of rape of a child in the first degree and two counts of child molestation in the first degree for the rape and molestation of F.M-G. and the molestation of R.A.L. The charging periods for the counts involving F.M-G. were identical. Rodriguez-Montoya appeals his convictions.

## ANALYSIS

### Double Jeopardy

Rodriguez-Montoya asserts that the trial court's instructions allowed the jury to rely on the same act to find him guilty of both rape and molestation of F.M-G. in violation of his protection against double jeopardy. An appellant may raise a

double jeopardy claim for the first time on appeal because it implicates a constitutional right.[1] This court reviews double jeopardy claims de novo.[2]

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution protect defendants against multiple punishments for the same offense.[3] Beyond these constitutional limitations, the legislature has the power to define and designate punishment for criminal conduct.[4] We must determine whether the legislature intended to allow multiple punishments for criminal conduct that violates both the rape of a child in the first degree statute and the child molestation in the first degree statute.[5]

First, we evaluate the language of the relevant statutes to determine if they expressly authorize multiple punishments for conduct that violates more than one statute.[6] An individual is guilty of child rape in the first degree "when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."[7] "Sexual intercourse" means both any penetration of the vagina

---

[1] State v. Mutch, 171 Wn.2d 646, 661, 254 P.3d 803 (2011); RAP 2.5(a)(3).

[2] Mutch, 171 Wn.2d at 661-62.

[3] U.S. CONST. amend. V (no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb"); WASH. CONST. art. I, § 9 ("[n]o person shall be . . . twice put in jeopardy for the same offense"); Mutch, 171 Wn.2d at 663.

[4] State v. Louis, 155 Wn.2d 563, 568, 120 P.3d 936 (2005).

[5] See State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995) (explaining that whether the legislature authorized multiple punishments is a question of legislative intent); see also State v. Wilkins, 200 Wn. App. 794, 806, 403 P.3d 890 (2017) (holding that the legislature authorized multiple punishments for criminal conduct that constitutes first degree child rape and first degree child molestation), petition for review filed, No. 95250-7 (Wash. Nov. 25, 2017).

[6] Louis, 155 Wn.2d at 569.

[7] RCW 9A.44.073(1).

or anus of one person by another and "any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex."[8]

An individual is guilty of child molestation in the first degree "when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim."[9] "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party."[10]

Neither statute expressly authorizes or prohibits multiple punishments for offenses arising out of a single act.[11] Where, as here, the statutes are silent, we apply a rule of statutory construction known as the "same evidence test."[12] The same evidence test provides that a defendant's convictions for two offenses that are identical both in fact and in law violate his protection against double jeopardy.[13] Thus, if the facts are not identical or "[i]f each offense requires proof of an element not required in the other, where proof of one does not necessarily prove the other, the offenses are not the same [in fact or in law] and multiple convictions are permitted."[14]

---

[8] RCW 9A.44.010(1).
[9] RCW 9A.44.083(1).
[10] RCW 9A.44.010(2).
[11] Wilkins, 200 Wn. App. at 807.
[12] Louis, 155 Wn.2d at 569.
[13] Louis, 155 Wn.2d at 569 (quoting Calle, 125 Wn.2d at 777).
[14] Louis, 155 Wn.2d at 569.

When an act of sexual intercourse involves penetration, rape of a child in the first degree and child molestation in the first degree are legally distinct; rape requires proof of penetration while molestation does not, and molestation requires proof of sexual gratification while rape does not.[15] In State v. Land,[16] however, this court recognized that when an act of sexual intercourse involves oral-genital contact alone, if done for sexual gratification, the same evidence can prove both rape and molestation. Because they are the same in fact and in law, in this circumstance the two crimes are not separately punishable based on a single act.[17] Thus, when both are charged, the trial court should instruct the jury that it must find the State based each count on separate and distinct acts to avoid a potential double jeopardy violation.[18] But a violation does not occur if the evidence, arguments, and instructions make it "'manifestly apparent'" to the jury that the State based each count on a separate act and "'[was] not seeking to impose multiple punishments for the same offense.'"[19]

Rodriguez-Montoya asserts that the jury could have relied on a single act to convict him of both rape and molestation of F.M-G. He notes that the State presented evidence of multiple acts of sexual contact between his penis and F.M-G.'s mouth during the same charging period. He contends that because the trial court did not instruct the jury that it must rely on separate and distinct acts to

---

[15] State v. Jones, 71 Wn. App. 798, 825, 863 P.2d 85 (1993).
[16] 172 Wn. App. 593, 600, 295 P.3d 782 (2013).
[17] Land, 172 Wn. App. at 600.
[18] Land, 172 Wn. App. at 600-01.
[19] Mutch, 171 Wn.2d at 664 (alteration in original) (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008)).

convict him on each count, the two convictions violate his guaranty against double jeopardy. We disagree.

In Land, a jury convicted Land of one count of child rape and one count of child molestation, both involving the same child and the same charging period.[20] We held that although the trial court should have submitted an instruction informing the jury that the State must have based each count on a separate and distinct act, the absence of an instruction did not violate Land's right to be free from double jeopardy.[21] We explained that the victim's testimony, the State's arguments, and the to-convict instructions and information delineating the two counts made it manifestly apparent that the State was not seeking to impose multiple punishments for the same offense.[22]

We see this case as similar to Land. F.M-G.'s mother testified that F.M-G. told her that Rodriguez-Montoya would take him into "the room where the washing machines are," pull down F.M-G.'s pants, and have them touch each other's "parts." F.M-G. also told a child interview specialist that Rodriguez-Montoya had taken F.M-G.'s hand and placed it on Rodriguez-Montoya's "pee" or his "privacy" and that Rodriguez-Montoya had touched F.M-G.'s "privacy." F.M-G. also testified to at least two incidents of sexual intercourse. He stated that more than once Rodriguez-Montoya "put his privacy in my butt" and explained that Rodriguez-Montoya used the part of his body that he "pee[s]" from to do so. In addition, F.M-G. stated that Rodriguez-Montoya put his "privacy in my mouth" on five separate

---

[20] Land, 172 Wn. App. at 597.
[21] Land, 172 Wn. App. at 603.
[22] Land, 172 Wn. App. at 602-03.

occasions. F.M-G. therefore implicitly distinguished the acts that constituted rape from those that constituted molestation.

The State explicitly did so in its closing argument. It told the jury that it had charged Rodriguez-Montoya with "[r]ape of a child in the first degree for his anal and oral rape of [F.M-G. and] child molestation in the first degree for his inappropriate and gratuitous touching of [F.M-G.]." The State explained the unanimity instruction to the jury in relation to the rape charge and said, "[I]f you can agree that at least on one occasion [F.M-G.] was anally raped within that charging period and you're unanimous, that's enough. If you can unanimously agree that within that charging period he was orally raped, that's enough." In reference to the molestation charge, the State explained, "Now with regard to Count II having to do with [F.M-G.], that same [unanimity] instruction applies that I just described. That's because [F.M-G.] has described multiple types of sexual contact. His hand on the defendant's penis, the defendant's hand on [F.M-G.'s] penis, and the fact that it happened multiple times." The State therefore defined the acts involving sexual intercourse as rape and the acts involving touching as molestation.

Finally, the to-convict instructions, like the information, clearly differentiated between the two counts. Instruction 9 stated that to convict Rodriguez-Montoya of rape of a child in the first degree involving F.M-G., the jury had to find that he had "sexual intercourse" with F.M-G. during the charging period. Instruction 13 stated that to convict Rodriguez-Montoya of child molestation in the first degree involving F.M-G., the jury had to find that he had "sexual contact" with F.M-G. during the

-7-

charging period. Instructions 10 and 16 provided the statutory definitions of sexual intercourse and sexual contact, respectively.

Similar to Land, we conclude that F.M-G.'s testimony, the State's arguments in closing, and the to-convict instructions and information distinguishing the rape and molestation charges made it manifestly apparent to the jury that the State was not seeking to impose multiple punishments for a single act. The trial court did not violate Rodriguez-Montoya's guaranty against double jeopardy by failing to instruct the jury that it needed to rely on separate and distinct acts for the bases of each conviction. Thus, no constitutional error occurred.

## ER 803(a)(4)

Rodriguez-Montoya also challenges the trial court's admission of R.A.L.'s hearsay statement to her pediatrician on the ground that she did not make it for purposes of diagnosis or treatment. We review a trial court's rulings on the admissibility of evidence for an abuse of discretion.[23]

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted.[24] Generally, a hearsay statement is not admissible at trial unless it satisfies an exception to the rule.[25] ER 803(a)(4) provides that the hearsay rule does not exclude "[s]tatements made for purposes of medical diagnosis or treatment." The exception applies only to hearsay statements that were

---

[23] State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).
[24] ER 801(c).
[25] ER 802.

"'reasonably pertinent to diagnosis or treatment.'"[26]  "Generally, to establish reasonable pertinence (1) the declarant's motive in making the statement must be to promote treatment, and (2) the medical professional must have reasonably relied on the statement for purposes of treatment."[27]

As a preliminary matter, the State asserts that Rodriguez-Montoya did not preserve this claim for appellate review.  Generally, an appellant may not challenge a trial court's decision to admit evidence unless "a timely objection or motion to strike [was] made, stating the specific ground of objection, if the specific ground was not apparent from the context."[28]  We will not reverse the trial court's decision to admit evidence where the defendant seeks reversal "based on an evidentiary rule not raised at trial."[29]  For example, in State v. Powell,[30] defense counsel objected at trial to a witness's testimony on the ground that it was not credible.  On appeal however, Powell challenged the admissibility of evidence based on ER 403.[31]  Our Supreme Court held defense counsel's failure to object to the witness's testimony at trial based on ER 403 meant that Powell did not preserve the issue for appellate review.[32]

Here, Rodriguez-Montoya claims that the trial court abused its discretion in admitting R.A.L.'s statement because of her young age and because it identified

---

[26] ER 803(a)(4); In re Pers. Restraint of Grasso, 151 Wn.2d 1, 19-20, 84 P.3d 859 (2004) (quoting State v. Woods, 143 Wn.2d 561, 602, 23 P.3d 1046 (2001)).
[27] Grasso, 151 Wn.2d at 20.
[28] ER 103(a)(1).
[29] State v. Powell, 166 Wn.2d 73, 82, 206 P.3d 321 (2009).
[30] 166 Wn.2d 73, 83, 206 P.3d 321 (2009).
[31] Powell, 166 Wn.2d at 84.
[32] Powell, 166 Wn.2d at 84.

him as her abuser. The State claims that he did not object below to the admissibility of R.A.L.'s statement based on these grounds. Rather, in the trial court he objected on the ground that R.A.L. did not make her statement for purposes of medical diagnosis or treatment. He thus asserted that her statement did not meet the requirements of ER 803(a)(4). On appeal, he claims error based on the same evidentiary rule but now asserts more specific grounds to explain why R.A.L. did not make her statement for purposes of medical diagnosis or treatment. Because he seeks review of the same issue he raised at trial, he preserved it for review.

First, Rodriguez-Montoya contends that at four years old, R.A.L.'s age makes it unlikely that she understood the purpose for making her statement to Guerra. This required that the trial court identify evidence in the record corroborating her statement. Washington courts admit child hearsay statements under ER 803(a)(4) even if the child does not understand that she made the statements for purposes of medical diagnosis or treatment.[33] But a trial court may admit child hearsay "only if corroborating evidence supports the child's statements and it appears unlikely that the child would have fabricated the cause of injury."[34] This corroborating evidence must be part of the totality of the circumstances in which the child makes the statements.[35] "[T]o facilitate appellate review, the trial court should identify on the record the specific evidence—drawn from the totality

---

[33] State v. Florczak, 76 Wn. App. 55, 65, 882 P.2d 199 (1994).
[34] Florczak, 76 Wn. App. at 65.
[35] Florczak, 76 Wn. App. at 65-66.

of the circumstances—on which it relies to determine whether or not the statements were reliable, and therefore admissible."[36]

Rodriguez-Montoya contends that the court's failure to identify corroborating evidence and the absence of evidence in the record supporting R.A.L.'s statement show that the court abused its discretion. He notes that R.A.L. had no physical injuries and claims that because she was "not crying, upset or fussy" when she spoke with Guerra, her reported behavior did not support her statement.

Consistent with Rodriguez-Montoya's argument, the trial court did not identify on the record what it considered to establish the reliability of R.A.L.'s out-of-court statement to Guerra. The record, however, documents the circumstances surrounding her statement to Guerra.[37] The totality of these circumstances corroborate R.A.L.'s statement. First, Guerra testified that when she examined R.A.L., she observed R.A.L.'s vagina and labia were red. R.A.L.'s mother testified that Guerra examined R.A.L. three or four days after R.A.L. told her that Rodriguez-Montoya had molested her. Because Guerra did not examine R.A.L. immediately after the incident, she testified that she could not determine whether the abuse caused the redness. Guerra stated that a number of issues could have caused the redness, including poor hygiene, a yeast infection, and contact

_____

[36] Florczak, 76 Wn. App. at 66.
[37] See Florczak, 76 Wn. App. at 66-67 (holding that although the trial court did not consider the reliability of KT's out-of-court statements, the record sufficiently documented corroborating evidence of those statements, including KT's emotional state and behavior during her counseling sessions).

dermatitis, all of which are common. She also stated, however, that touching could explain the redness.

Further, Guerra had been R.A.L.'s pediatrician since R.A.L. was 18 months old, which means R.A.L. likely knew she was seeing Guerra for a medical appointment and had no reason to invent her statement. R.A.L.'s mother testified that R.A.L. had seen Guerra for regular checkups over the last two-and-a-half years. Guerra explained that when a patient comes in for an appointment, the clinic follows the same procedures: the medical assistant takes the patient's vital signs, inquires about her chief complaint, does a short "review of systems," and then puts her in an examination room. Guerra stated that she begins by greeting the child, asks about her history, and then conducts a physical examination. On November 11, 2014, consistent with protocol, Guerra asked R.A.L. about why she had come to see her before performing a physical examination. Guerra documented her conversation with R.A.L. as follows:

> [R.A.L.] tells me in Spanish that Diego asked her to touch his cola. She said no, and he unzipped his pants and put her hands in—in quotations—she points to the genital area. Then he pulled her pants down and Diego touch[ed] her—she points to her vaginal area—with his hands.
> Diego told [R.A.L.] that if she did not tell anybody, he was going to buy her candy. I asked [R.A.L.] if it hurt when he touch[ed] her, and [R.A.L.] responded no.

Because R.A.L. had been seeing Guerra for "regular checkups" for over two years and each checkup involved similar procedures, R.A.L. likely knew she was seeing Guerra on November 11 for a medically related purpose and had no incentive to fabricate her statement. This, in addition to the redness around

-12-

R.A.L.'s vagina and labia, shows that the totality of the circumstances corroborates R.A.L.'s statement. Also, courts generally accept that a child's young age supports the conclusion that she did not fabricate the cause of her injury.[38] R.A.L. was only four years old when she made her statement to Guerra and therefore likely had no reason to fabricate the abuse. Thus, the trial court did not abuse its discretion in finding that R.A.L. made her statement for purposes of medical diagnosis or treatment and admitting it under ER 803(a)(4).

Rodriguez-Montoya also challenges the trial court's admission of R.A.L.'s statement identifying him as her abuser. Generally, statements attributing fault are not admissible under ER 803(a)(4).[39] But when the declarant is a child, "statements regarding the identity of the abuser are reasonably necessary to the child's medical treatment."[40] The medical provider must know who abused a child to avoid returning the child to the abusive relationship.[41] Rodriguez-Montoya's identity was therefore related to Guerra's diagnosis and treatment of R.A.L. The

---

[38] Florczak, 76 Wn. App. at 66; accord State v. Ashcraft, 71 Wn. App. 444, 457-58, 859 P.2d 60 (1993) (holding that because of J.'s young age, she appeared to have no reason to fabricate the nature of her injuries); State v. Butler, 53 Wn. App. 214, 222-23, 766 P.2d 505 (1989) (explaining that a child of two and a half would normally have no reason to fabricate the cause of his injury).

[39] Butler, 53 Wn. App. at 217.

[40] State v. Hopkins, 134 Wn. App. 780, 788, 142 P.3d 1104 (2006) (holding an out-of-court statement by the thirteen-year-old victim to a nurse practitioner identifying her sister's friend as her abuser was admissible under ER 803(a)(4)); accord State v. Robinson, 44 Wn. App. 611, 613-16, 722 P.2d 1379 (1986) (holding an out-of-court statement by the three-year-old victim to a physician identifying her father's friend as her abuser was admissible under ER 803(a)(4)).

[41] Hopkins, 134 Wn. App. at 788.

trial court did not abuse its discretion in admitting R.A.L.'s statement identifying Rodriguez-Montoya as her abuser.

## CONCLUSION

Rodriguez-Montoya's convictions for rape and molestation of F.M-G. did not violate his protection against double jeopardy. The trial court did not abuse its discretion by admitting R.A.L.'s out-of-court statement to her pediatrician describing the abuse and identifying her abuser as Rodriguez-Montoya. We affirm.

*Leach, J.*

WE CONCUR:

*Spearman, J.*

*Appelwick*