# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54296-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| EDDIE RICHARD SMITH, JR., aka EDDIE RICHARD SMITH EDDIE R. SMITH, | |
| Appellant. | |

MAXA, P.J. – Eddie Smith, Jr. appeals his first degree kidnapping conviction and his exceptional sentence, which was based both on the free crimes aggravating factor and on domestic violence aggravating factors. Smith also was convicted of second degree assault. The convictions arose from an incident in which witnesses heard a woman scream for help in an alley behind her house and saw Smith assault her and drag her inside as she tried to crawl away.

We hold that

(1) sufficient evidence supported the two alternative means of committing first degree kidnapping on which the State relied at trial: abduction with the intent to facilitate the commission of second degree assault and abduction with the intent to cause bodily injury;

(2) we need not consider whether the trial court erred in failing to instruct the jury to specifically determine whether the domestic violence aggravating factor applied to first degree

kidnapping or whether sufficient evidence supported the domestic violence aggravating factor for first degree kidnapping because the court expressly found that the free crimes aggravating factor alone provided a basis for its exceptional sentence and Smith does not challenge the application of that aggravator;

(3) although Smith is entitled to have his offender score reduced by two points under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), he is not entitled to resentencing because the record is clear that the trial court would have imposed the same exceptional sentence even if his 17.5 point offender score was two points lower; and

(4) Smith's statement of additional grounds (SAG) claims have no merit.

Accordingly, we affirm Smith's first degree kidnapping conviction and the trial court's exceptional sentence, but we remand for the trial court to correct Smith's offender score in the judgment and sentence.

## FACTS

*Incident*

Victoria Crettol lived in a house that had access to an alley directly behind it. In May 2018, Crettol's neighbors Jeffrey Ball, Tim Parsons, and Jessica DeVisser all called 911 in the middle of the night because they all heard Crettol crying for help in the alley behind their houses. Both Ball and DeVisser saw Crettol on the ground as a man, later identified as Smith, stood over her and punched her. Crettol was screaming, "Help. Stop. You're hurting me" and "You're killing me. I can't breathe." 5 Report of Proceedings at 496. Smith kept telling her to shut up and was trying to drag her backwards toward Crettol's house. Crettol was trying to crawl away. At some point, Smith and Crettol disappeared back inside the house.

Several police officers arrived at Crettol's house, including officer Jacob Willard. Willard shined his flashlight into the house and saw a male figure. But nobody responded when Willard knocked on the back door and announced himself as the police.

Willard's supervisor, sergeant Jeffrey Katz, concluded that officers needed to conduct a more thorough investigation of the 911 calls. Katz knocked and announced himself as police, but did not get a response. Willard shined a flashlight in the front window and saw Crettol lying on her back making kicking movements. Smith was trying to hide behind a piece of furniture. Willard and Katz spotted blood on Crettol's shoes and decided to conduct a welfare check by forcing open the front door.

When the police officers entered Crettol's house, they saw Crettol lying on the ground, severely injured, and Smith was near her with a large hunting knife next to his hand. Crettol had lacerations and blood all over her face, in her hair, and on her hands. Crettol was sobbing and appeared terrified of Smith as she pointed at him and was trying to move away from him. Smith had blood on his hands and face.

The State charged Smith with second degree assault and first degree kidnapping with the intent to facilitate the commission of second degree assault or flight thereafter or to inflict bodily injury.[1] The second degree assault and first degree kidnapping charges both included two aggravating factors: (1) Smith was armed with a deadly weapon during the commission of the crimes and (2) the crimes involved domestic violence.

---

[1] The State also charged Smith with interfering with the reporting of domestic violence, but later dismissed that charge.

*Jury Trial*

Crettol died of a drug overdose before the start of trial. The trial court entered an order in limine prohibiting any references to the fact that Crettol had died.

Ball testified that he saw Smith standing in the alley punching Crettol. The State played Ball's 911 call for the jury and during that call, Ball told the 911 operator that he saw Smith trying to drag Crettol back into the house. When shown a picture of Crettol after the assault, Ball stated that he could not recognize her because of the extent of her injuries.

DeVisser testified that she saw a man on top of a woman lying in the alley as he was slapping and hitting her. She said that Crettol was trying to crawl away and that the man was restraining her and trying to drag her backwards.

Willard testified to the facts above. He stated that when they entered Crettol's house, Crettol was covered in blood and moving away from Smith, who had a knife next to his hand. Katz testified that after they entered Crettol's residence, Crettol appeared extremely upset and terrified of Smith. Katz stated that there was a pool of blood next to the driver's side of Crettol's car in the alley and other parts of the alley. A latent print examiner testified that she found Smith's fingerprints on the knife.

Lynne Berthiaume, a forensic nurse specialist, examined Crettol in the emergency room. Crettol told Berthiaume that she had been beaten over and over again for 12 hours by her boyfriend. Berthiaume testified that Crettol sustained a six centimeter laceration to the back of the head which had to be stapled, multiple contusions and lacerations to different areas of her face, forearms, and hands, an orbital floor fracture, and a nasal bone fracture.

Smith testified to a different version of events. He claimed that Crettol had asked him to come to her house to remove her boyfriend, and that person had yelled at Crettol in the alley and had assaulted her. He denied assaulting Crettol.

*Jury Instructions*

The trial court instructed the jury that it could find Smith guilty of first degree kidnapping if it found that Smith had intentionally abducted Crettol with the intent to "(a) facilitate the commission of Assault in the Second Degree or flight thereafter, or (b) to inflict bodily injury on the person." Clerk's Papers (CP) at 102.

The trial court provided a to-convict instruction regarding second degree assault. The court further instructed that if the jury found Smith guilty of second degree assault, it must determine whether the crime was an aggravated domestic violence offense. The court then gave an instruction regarding the elements of an aggravated domestic violence offense. No similar instructions were given for first degree kidnapping. Smith did not object to the failure to give specific aggravated domestic violence instructions for first degree kidnapping.

The trial court provided two separate special verdict forms, asking the jury to determine if second degree assault was an aggravated domestic violence offense and if first degree kidnapping was an aggravated domestic violence offense. Smith did not object to the court giving an aggravated domestic violence instruction for first degree kidnapping. The court also provided special verdict forms for whether Smith was armed with a deadly weapon.

The jury found Smith guilty of second degree assault and first degree kidnapping. The jury found in special verdict forms that Smith had committed both crimes while armed with a deadly weapon and that both crimes were aggravated domestic violence offenses.

*Sentencing*

At sentencing, the State calculated Smith's standard range sentence as 149 to 198 months for first degree kidnapping and 63 to 84 months for second degree assault based on an offender score of 17.5 for each crime. Smith's offender score included two points for two unlawful possession of a controlled substance convictions. The State requested that Smith's sentences run consecutively, rather than concurrently, as an exceptional sentence based on either the free crimes aggravator or the domestic violence aggravators.

Using the low end of the standard range sentences, the trial court sentenced Smith to 149 months for first degree kidnapping plus 24 months for the deadly weapon sentencing enhancement and 63 months for second degree assault plus 12 months for the deadly weapon sentencing enhancement and.

The trial court found in the written findings of fact that the jury found the two elements of the domestic violence aggravating factor beyond a reasonable doubt regarding second degree assault and first degree kidnapping. The court found that the jury's aggravated domestic violence findings for first degree kidnapping and second degree assault supported an exceptional sentence. The court also found that the free crimes aggravator applied to both convictions and that "this factor alone, provides a basis for an exceptional sentence." CP at 187. As a result, the court imposed the sentences on the two convictions to run consecutively as an exceptional sentence.

Smith appeals his first degree kidnapping conviction and his exceptional sentence.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Smith argues that sufficient evidence does not support both of the two alternative means

of committing first degree kidnapping on which the State relied at trial.  We disagree.

1.    Standard of Review

The test for determining sufficiency of evidence is whether any rational trier of fact could

find all the elements of the charged crime beyond a reasonable doubt after viewing the evidence

in a light most favorable to the State.  *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795

(2019).  We resolve all reasonable inferences based on the evidence in favor of the State and

interpret inferences most strongly against the defendant.  *Id.* at 821-22.  The State's evidence is

admitted as true and circumstantial evidence is considered as equally reliable as direct evidence.

*State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019).  And we defer to the fact finder's

resolution of conflicting testimony and evaluation of the evidence's persuasiveness.  *State v.

Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

2.    Legal Principles

When a trial court presents the jury with alternative means of committing a crime,

substantial evidence must support each alternative means in order to ensure the unanimity of the

jury verdict.  *State v. Garcia*, 179 Wn.2d 828, 835-36, 318 P.3d 266 (2014).

RCW 9A.40.020 provides fives alternative means of committing first degree kidnapping.

*State v. Harrington*, 181 Wn. App. 805, 817-18, 333 P.3d 410 (2014).  The State relied on two of

the means at trial.  First, a person commits first degree kidnapping when he or she intentionally

abducts another person with the intent to facilitate the commission of any felony or flight

thereafter.  RCW 9A.40.020(1)(b).  The felony here was second degree assault.  Second degree

assault is defined as intentionally assaulting another and recklessly inflicting substantial bodily harm, or assaulting another with a deadly weapon under circumstances that do not amount to first degree assault. RCW 9A.36.021(1)(a), (c).

Second, a person commits first degree kidnapping when he or she intentionally abducts another person with the intent to inflict bodily injury on the other person. RCW 9A.40.020(1)(c). "Bodily injury" is defined as "physical pain or injury, illness, or an impairment of physical condition." RCW 9A.04.110(4)(a).

Both alternative means require that the defendant intentionally "abduct" another person. RCW 9A.40.010(1) defines "abduct" as "to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." Smith does not argue that there was insufficient evidence to prove that he abducted Crettol.

A kidnapping conviction requires only the *intent* to carry out one of the means enumerated in RCW 9A.40.020(1), not that the perpetrator actually complete one of those qualifying means. *State v. Louis*, 155 Wn.2d 563, 571, 120 P.3d 936 (2005). RCW 9A.08.010(1)(a) provides that "[a] person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime."

3. Intent to Facilitate the Commission of Second Degree Assault

Crettol's neighbors testified that they heard Crettol scream for help in the back alley and that Smith was killing her. Ball and DeVisser testified that they also saw Smith continue to hit Crettol and DeVisser saw Smith drag her toward the house as she tried to crawl away. This evidence clearly shows that Smith abducted Crettol both by preventing her from fleeing and dragging her inside her house. And a reasonable inference from this evidence is that Smith

8

prevented Crettol from fleeing with the intent to continue assaulting her in the alley and dragged her inside the house to continue assaulting her there.

The State had to prove that Smith abducted Crettol with the intent to commit *second degree* assault, which requires recklessly inflicting substantial bodily harm or assault with a deadly weapon. RCW 9A.36.021(1)(a), (c). A reasonable inference is that Smith prevented Crettol from fleeing with the intent to inflict substantial bodily harm as he continued to beat her in the alley. And inside the house, police found a knife next to Smith that had his fingerprints on it. Therefore, a reasonable inference is that Smith dragged Crettol into the house with the intent of assaulting her with a deadly weapon.

Smith argues that the second degree assault had been completed before the kidnapping began. He claims that the assault with a deadly weapon and the infliction of substantial bodily harm occurred before he dragged Crettol back inside the house. He notes that the prosecutor stated in closing argument that Smith already had committed the second degree assault by the time he brought Crettol back inside.

However, we construe the evidence in the light most favorable to the State. *Dreewes*, 192 Wn.2d at 821-22. Smith's argument ignores the fact that the evidence supports the conclusion that Smith abducted Crettol in the alley when he prevented her from fleeing and inflicted substantial bodily harm when he beat her in the alley. And the jury was free to disregard the prosecutor's statements and conclude that Smith had the intent to assault Crettol with a deadly weapon when he dragged her into the house.

Accordingly, we hold that there was sufficient evidence to show that Smith intentionally abducted Crettol with the intent to facilitate the commission of second degree assault.

4.    Intent to Inflict Bodily Injury

For the same reasons that there was sufficient evidence to support the conclusion that Smith abducted Crettol with the intent to facilitate the continued commission of second degree assault, the evidence supports the conclusion that Smith abducted Crettol with the intent to inflict bodily injury on her.  This evidence shows that Smith abducted Crettol by preventing her from fleeing in the alley, and that he inflicted bodily injury there.  And a reasonable inference from this evidence is that Smith dragged Crettol inside her house with the intent to continue inflicting injury on her there.

Accordingly, we hold that there was sufficient evidence to show that Smith intentionally abducted Crettol with the intent to inflict bodily injury.

B.    EXCEPTIONAL SENTENCE FOR FIRST DEGREE KIDNAPPING

Smith argues that his exceptional sentence for first degree kidnapping must be reversed because (1) the trial court failed to instruct the jury to determine whether the domestic violence aggravating factor specifically applied to first degree kidnapping, and (2) sufficient evidence did not support the domestic violence aggravating factor for first degree kidnapping.  We decline to consider these arguments because even if the domestic violence aggravating factor is invalid for first degree kidnapping, the trial court expressly found that the free crimes aggravating factor alone provided a basis for its exceptional sentence and Smith does not challenge the application of that aggravator.

We can affirm an exceptional sentence even though one of the aggravating factors supporting the exceptional sentence is invalid.  *State v. Weller*, 185 Wn. App. 913, 930, 344 P.3d 695 (2015).  " 'Where the reviewing court overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors

that are upheld, it may uphold the exceptional sentence rather than remanding for resentencing.' " *Id.* (quoting *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003)). "This rule is particularly appropriate when the trial court expressly states that the same exceptional sentence would be imposed based on any one of the aggravating factors standing alone." *Weller*, 185 Wn. App. at 930.

RCW 9.94A.535(2)(c) provides that a "trial court may impose an aggravated exceptional sentence without a finding of fact by a jury [when] . . . [t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished," otherwise known as the free crimes aggravator. *State v. Smith*, 7 Wn. App. 2d 304, 309, 433 P.3d 821 (2019). After the court determines that the free crimes aggravator applies, it has discretion to impose an exceptional sentence on all current offenses. *Id.* at 309-11.

Here, the trial court expressly found:

> The aggravating factor of unpunished current offenses applies to both Count I and Count 2. The evidence of this aggravating factor is, "The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." The legislature did not consider this factor in determining the standard range. *The presence of this factor alone, provides a basis for an exceptional sentence.*

CP at 187 (emphasis added). This finding makes it clear that the trial court would have imposed an exceptional sentence even without the domestic violence aggravating factor.

Smith does not challenge the trial court's application of the free crimes aggravating factor. Because that aggravator is valid, we hold that the trial court did not err in imposing an exceptional sentence for the first degree kidnapping conviction.

C.      REVISED OFFENDER SCORE UNDER *BLAKE*

Smith argues that he is entitled to resentencing because his offender score included two prior convictions for unlawful possession of a controlled substance. The State argues that

11

resentencing is not necessary because a recalculated offender score would still result in the same offender score of 9 plus with the same standard range sentence, and the trial court would have imposed an exceptional sentence even if the offender score was reduced by two points. We agree with the State.

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates state and federal due process clauses and therefore is void. 197 Wn.2d at 195. "[A] conviction based on an unconstitutional statute cannot be considered in calculating the offender score." *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021).

Smith's offender score of 17.5 points for each offense included two convictions for unlawful possession of a controlled substance. The standard range sentence for second degree assault was 63 to 84 months and the standard range for first degree kidnapping was 149 to 198 months. As Smith concedes, his recalculated offender score of 15.5 points for each offense would have resulted in the same standard range sentence because it was still far higher than 9. *See* RCW 9.94A.510; *Smith*, 7 Wn. App. 2d at 308 ("A defendant whose offender score is at or above 9 will have the same standard range sentence regardless of the number of current or prior offenses.").

In addition, resentencing is not necessarily required when a defendant's offender score includes a void conviction and the defendant was sentenced to an exceptional sentence. "When the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy *unless the record clearly indicates the sentencing court would have imposed the same sentence anyway*." *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997) (emphasis added).

The trial court imposed both of Smith's sentences at the bottom of the standard range and then ran Smith's sentences consecutively as an exceptional sentence based on the free crimes aggravator. We believe that the record is clear that the trial court would have imposed the same exceptional sentence even with a recalculated offender score. Because Smith's corrected offender score remained far above 9, the free crimes aggravator still would apply. Therefore, we reject Smith's argument that he is entitled to resentencing and remand only for the trial court to correct the offender score on the judgment and sentence.

D.      SAG CLAIMS

1.      Constitutional Claims

First, Smith asserts that his case should have been dismissed because he never had the opportunity to question Crettol during a pretrial interview or cross-examine her at trial in violation of the confrontation clause. However, the confrontation clause only applies to witnesses who make testimonial statements, and the right to confrontation means that the defendant must have the opportunity to confront those *who bear testimony* against him or her. *State v. Burke*, 196 Wn.2d 712, 725, 478 P.3d 1096, *cert. denied,* 142 S. Ct. 182 (2021). Crettol never provided a pretrial interview and did not testify at trial because she had passed away. In addition, Smith does not argue that any of Crettol's statements to others that were admitted at trial should have been suppressed. Therefore, Smith's right to confront witnesses presenting evidence against him was not violated.

Second, Smith asserts that his due process rights were violated. We do not address this argument because his assertion is too vague and fails to adequately inform us of the nature of the due process violation. RAP 10.10(c); *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Third, Smith asserts that Crettol's failure to provide a pretrial interview and her absence at trial constituted a *Brady*[2] violation. But he fails to identify what evidence the State suppressed and how it relates to any testimony that Crettol could have given if she had not died. Therefore, Smith' argument has no merit.

2.    Prosecutorial Misconduct

Smith asserts that the prosecutor committed misconduct for (1) mischaracterizing him as Crettol's boyfriend and a member of her household to the jury and (2) deceiving the jury by stating that Crettol was unavailable.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). A prosecutor commits misconduct during oral argument by arguing facts not in evidence. *See In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 705, 286 P.3d 673 (2012). However, during closing argument the prosecutor is given wide latitude to assert reasonable inferences from the evidence. *Slater*, 197 Wn.2d at 680.

First, the prosecutor's characterization of Smith as Crettol's boyfriend during closing arguments was a reasonable inference from the evidence. DeVisser testified that she regularly heard Crettol and Smith speaking to each other at least once a week. In addition, Berthiaume testified that Crettol had stated that she had been beaten by her boyfriend, and two police officers testified that Crettol appeared terrified of Smith after they breached the front door.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

Second, there was no misconduct when the prosecutor told the jury that Crettol was unavailable because the trial court had granted an order in limine prohibiting any references to the fact that Crettol had died of a drug overdose.

We reject Smith's prosecutorial misconduct claims.

3.    Ineffective Assistance of Counsel

Smith asserts that he received ineffective assistance of counsel when his attorney failed to file a motion to dismiss (1) over a confrontation clause violation and a *Brady* violation and (2) on the grounds that multiple continuances were granted in violation of the time for trial requirements of CrR 3.3.

As discussed above, Smith's confrontation clause and *Brady* violation claims have no merit.  Therefore, defense counsel was not ineffective for failing to file a motion to dismiss on those grounds.

Regarding the alleged CrR 3.3 violations, Smith fails to identify which motions for continuance were not properly granted.  Further, the record does not include any of the continuance motions that were filed or granted.  Without a complete record, we cannot determine whether the trial court improperly granted any of the continuances here and therefore cannot address if defense counsel's representation was deficient and prejudiced Smith.  RAP 9.2(b); *Alvarado*, 164 Wn.2d at 569.  Therefore, we will not address this issue.

CONCLUSION

We affirm Smith's first degree kidnapping conviction and the trial court's exceptional sentence, but we remand for the trial court to correct Smith's offender score in the judgment and sentence.

No. 54296-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
PRICE, J.

_____
BASSETT, J.P.T.*

* Judge Jeffrey Bassett is serving as a judge pro tempore of the court pursuant to RCW 2.06.150(1).