[No. 70452-0.   En Banc.]
Argued May 30, 2001.     Decided September 6, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH LANSDEN, *Petitioner*.

*Daniel M. Arnold*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Kevin G. Eilmes, Deputy*, for respondent.

IRELAND, J. — Defendant Kenneth Lansden sought review of a Court of Appeals decision affirming his conviction for manufacturing and possessing methamphetamine. At issue is whether law enforcement personnel, participating with a code inspector in executing an administrative search warrant for county code violations, were entitled to use their observations of drug evidence to obtain a subsequent warrant to search for evidence of a crime.

## FACTS

Lee Hargroves (Hargroves), a code inspector for Yakima County's Public Works Department, began an investigation of possible violations of the Yakima County Code at property on Pence Road in late February or early March 1999. Hargroves had been contacted by Yakima County Sheriff's Lieutenant Dan Wilson (Wilson) and Yakima County Commissioner Jim Lewis (Lewis). The officials had received citizen complaints about "people living in recreational vehicles and the storing of junk vehicles in a fenced area at 780 Pence Road in Yakima County, and related noise and traffic complaints." Clerk's Papers (CP) at 33.

Hargroves, whose primary job is to deal with nuisance

properties, junk vehicles, and zoning violations, holds a limited commission from the Yakima County Sheriff in order to perform his duties. Hargroves testified that in the course of enforcing the county code, he frequently secures search warrants in order "to obtain the evidence in the event that a citation is to be issued or a criminal action is taken." Report of Proceedings (RP) at 8. He also testified that when he must enter property in order to execute a search warrant, he usually requests assistance from the appropriate precinct lieutenant of the sheriff's office. Hargroves does not carry a firearm when he goes out on search warrants. He stated that he has received fairly frequent threats of violence—especially when "removing property or doing a forced cleanup or a citation issue." RP at 10.

Hargroves drove to Pence Road when he received the first complaints, but his view of the property in question was obscured by a six-foot fence. He was unable to make a determination about code violations, so he took no further action at that time.

On March 18, 1999, Hargroves received additional complaints and concerns about the property from Wilson and Lewis. As a result, he returned to the vicinity and obtained the permission of a neighboring property owner to view the property at 780 Pence Road from the vantage point of an elevated area overlooking the back yard. Based on his observations, Hargroves believed there was probable cause to request a search warrant to inspect the site.

Hargroves notified Wilson that he would be seeking a search warrant. He also received a phone call from Detective Tom Hicks of the Yakima County Sheriff's Office. Hicks advised Hargroves that there was suspicion of drug activity at the Pence Road location. Hicks testified that while he was in charge of the city-county narcotics enforcement hot line, he had been advised by anonymous callers that there was narcotic activity at the Pence Road site. In addition, he stated that there were reports of shots fired and neighbors finding hypodermic syringes which they believed came from

the site. Hicks also testified that his experiences with users and manufacturers of methamphetamine was that they were "violent people." RP at 59. He stated that clandestine methamphetamine labs can present serious chemical hazards. Several months earlier, a drug suspect, who had been arrested at the site, stated that he was living in one of the recreational vehicles on the property. Hicks indicated that if Hargroves obtained a search warrant, he should contact either Hicks or Wilson and should not enter the property alone. Hicks did not have probable cause for a search warrant for narcotics at that time.

Hargroves completed a sworn affidavit for search warrant. On March 19, Judge Ruth Reukauf, Yakima County District Court, signed the affidavit.[1] The document reads as follows:

> Lee Hargroves, being first duly sworn upon oath before the undersigned Judge/Court Commissioner of the above-entitled Court, does depose and say that he is a duly authorized building official employed by the Permit Services Division of the Yakima County Public Works Department and that he holds a commission from the Yakima County Sheriff to act as a deputy sheriff in regard to the enforcement of violations of the Yakima County Code relating to the buildings, nuisances, and zoning. Further your affiant states that he has probable cause to believe and does believe that evidence of violations of the Yakima County Code relating to nuisances, zoning and/or dangerous buildings is presently located at 780 Pence Road, Yakima WA which is more particularly described as follows:

> Assessor's Tax Parcel No. 181309-12023 as reflected on the attached Assessor's Plat Map attached hereto as Exhibit 1.

> Your affiant's probable cause is based upon the following. On March 16, 1999, your affiant was advised by Deputy Tom Hicks of the Yakima County Sheriffs Department that people were living in campers and/or travel trailers at the above-described property. This property had also been the subject of citizen complaints, forwarded to your affiant through the Office of the County Commissioners, regarding traffic and noise problems.

---

[1] Although the affidavit is dated March 19, 1998, it is clear from the affiant's statement that the document was signed by Judge Reukauf on March 19, 1999.

On March 18, 1999, your affiant was able to observe the property from a vantage point off Brown Lane which is located near Lookout Point. From that location, I was able to observe on the property a white camper which was mounted on a gold colored pick-up and a white camper which was not mounted on a vehicle. Your affiant was also able to observe a green garden hose attached to the side of the latter camper, which would indicate that it had water service and was not just being stored at the location. Further, your affiant observed a junk Volkswagen on the subject property.

In a subsequent conversation with Deputy Hicks, he advised that in October or November of 1998, he [h]ad been present on the subject property in connection with an investigation and had observed campers as well as 3 to 5 junk vehicles on the premises. He also had arrested one Jimmy Yarberry at that location on that occasion and Mr. Yarberry, subsequent to the arrest, had advised him that he had been residing in one of the campers located on the property.

Based upon the foregoing, your affiant asserts there is probable cause to believe that violations of the Yakima County Code [Yakima County Zoning Ordinance, Uniform Building Code and Uniform Dangerous Building Code] are taking place at the property above-described, to wit: the use of the camper(s) as residences and storage of junk vehicles. Your affiant further believes that evidence of said violations, consisting of the conditions of the interiors of the campers and registration and vehicle identification numbers of the junk vehicles, are presently located on the subject property.

Wherefore your affiant prays that the Court issue a warrant directed to the Sheriff of Yakima County and his deputies and to any peace officer of the State of Washington duly authorized to enforce or assist in enforcing any law thereof, authorizing entry in and upon the premises above-described for the purpose of inspecting said property for evidence of violations above-described and allowing your affiant to document the same through physical inspection and photography.

CP at 49-50.

Hargroves obtained a warrant to search the property (but not the main residence) for code violations. The search

warrant, signed by Judge Reukauf on March 19, 1999, reads as follows:

In the name of the State of Washington, to the Sheriff of Yakima County, State of Washington, his deputies or to any peace officer of the State of Washington duly authorized to enforce or assist in enforcing any law thereof,

GREETINGS:

WHEREAS, complaint ha[s] been made to and signed before the undersigned District Court Judge by one Lee Hargroves, of the Yakima County Public Works Department, Division of Permit Services, stating under oath, that he has probable cause to believe and does believe that there is evidence relevant to the commission of violations [of] the Yakima County Code is located at 780 Pence Road, Yakima WA 98908 which is more particularly described as follows:

Assessor's Tax Parcel No. 181309-12023 as reflected on the attached Assessor's Plat Map attached hereto as Exhibit 1.

AND the Court having found probable cause to believe there is evidence relevant to the commission of the offenses under the Yakima County Code [Yakima County Zoning Ordinance, Uniform Building and Uniform Dangerous Building Codes] is presently located in and upon the premises above-described.

NOW, THEREFORE, you are hereby commanded in the name of the State of Washington within ten (10) days of this date, to use such force as may be necessary and enter in and upon the real property described herein and search the same for evidence of any violations above-described. And further to photograph or otherwise document such violations if found. And to make return of this warrant within three (3) days of the execution of the same showing all acts and things done hereunder.

You are further commanded to serve a copy of this warrant upon the person or persons found in the above-described property and if no person or persons be found in possession thereof, you shall post a copy of this warrant in a conspicuous place on said property.

HEREIN FAIL NOT.

CP at 51-52.

Hargroves contacted Wilson, and a team of law enforcement officers was assembled to execute the warrant. On March 25, Hargroves attended a briefing conducted by Hicks to discuss the warrant and search procedures. Approximately 10 officers—including Wilson, other deputy sheriffs, members of the county-city narcotics unit, and an agent of the drug enforcement agency—then accompanied Hargroves to execute the warrant.[2]

Hicks testified that his "main purpose for being there was for the safety of both the neighbors and of Inspector Hargroves." RP at 78. Although he suspected there was a possibility of finding drugs during the search, he said his main function was to be there for safety issues.

The team secured the property and inspected the vehicles and outbuildings for evidence of illegal habitation and junk vehicles. They found such evidence, including food, clothing, bedding, utility connections to an outbuilding, and documents consistent with habitation of the recreational vehicles. Hargroves photographed conditions on the property.

In the course of the search, the officers accompanying Hargroves discovered chemicals and equipment that they recognized to be used in the manufacture of methamphetamine. Based on this evidence, Hicks obtained a second warrant authorizing a search of the mobile home residence on the property. Execution of that warrant the same day resulted in seizure of evidence of methamphetamine manufacture and evidence that Lansden was renting the residence.

A third search warrant and order for the destruction of

---

[2] Hargroves testified that, although it was rare, he had been accompanied on a few previous code violation searches by local narcotics unit members and drug enforcement authority agents. He said he assumed the search team was present to protect him, and decisions about the size and composition of search teams are made by precinct lieutenants. Hargroves stated that he did not mention a search for drugs or the members of the search team to the judge because at the time the warrant was issued, he had no knowledge of who would take part in the search.

hazardous substances was obtained on March 30.[3] During the execution of that warrant, additional drug evidence was found and Lansden was arrested.

## PROCEDURAL HISTORY

At his CrR 3.6 hearing, Lansden moved to suppress the drug evidence, arguing that the first warrant was a pretext to search for drugs. The State replied that the law enforcement officers were validly present to ensure the safety of Hargroves, and that the drug evidence was discovered in plain view while they were searching for evidence of code violations. The trial court denied Lansden's motion. Lansden then stipulated to the facts and was convicted, after a bench trial, of manufacturing and possessing methamphetamine.

Lansden appealed his conviction to Division Three of the Court of Appeals, contending that the trial court erred at the hearing under CrR 3.6 by refusing to suppress evidence of drugs found during the search authorized by the initial warrant. Specifically, Lansden argued that (1) the warrant was a pretext to search for drug evidence; (2) the warrant was executed in a manner exceeding its scope; (3) the warrant was not supported by probable cause; and (4) the warrant did not describe the evidence to be seized with sufficient particularity.

The Court of Appeals affirmed Lansden's conviction. *State v. Lansden*, No. 18582-6-III, 2000 Wash. App. LEXIS 1910, 2000 WL 1476173 (Wash. Ct. App. Oct. 5, 2000). The court concluded that "[t]here is no evidence from this record that the issuance of the initial search warrant was a pretext to search for evidence of drug related crimes on the property. The motion to suppress was properly denied." 2000 Wash. App. LEXIS 1910, *7.

This Court granted Lansden's petition for review of the Court of Appeals' decision.

---

[3] Neither the second nor the third search warrant was challenged by Lansden.

## ANALYSIS

*Pretext*

Lansden's primary claim is that the initial warrant issued to search for code violations was a pretext to enable law enforcement personnel to search the defendant's property for evidence of drugs. Lansden analogizes to this Court's line of pretext traffic stop cases, where minor traffic infractions led to searches for drugs or other criminal activity.

Lansden argues that the reasoning of *State v. Ladson*, a pretext case in the context of a traffic stop, applies to the case before us. The *Ladson* court concluded that there is "a constitutionally protected interest against warrantless traffic stops or seizures on a mere pretext to dispense with the warrant when the true reason for the seizure is not exempt from the warrant requirement." *State v. Ladson*, 138 Wn.2d 343, 358, 979 P.2d 833 (1999). Where a valid warrant is issued, the result reached in *Ladson* is not applicable, as the search in *Ladson* was warrantless.

The defendant also cites to *State v. Bartholomew*, 56 Wn. App. 617, 784 P.2d 1276 (1990), for the proposition that even when the police have a valid warrant, unauthorized law enforcement personnel may not be present to search and arrest for their own purposes. In the case before us, the search warrant was directed "to the Sheriff of Yakima County, State of Washington, his deputies or to any peace officer of the State of Washington duly authorized to enforce or assist in enforcing any law thereof." CP at 51. Even though the police may have suspected drug activity at Pence Road, there is no evidence that the officers who executed the warrant failed to conform with its directive.

We decline to apply a pretext analysis to searches pursuant to a valid warrant.

*Validity of Warrant*

However, we must also scrutinize the validity of the initial search warrant itself. We apply a fundamental

provision of state constitutional law: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. In Washington, an "absolutely necessary component of a valid warrant is that it be issued by a magistrate with the legal authority to issue it." *City of Seattle v. McCready*, 123 Wn.2d 260, 272, 868 P.2d 134 (1994).

■ Our state courts of limited jurisdiction have no inherent authority to issue administrative search warrants. Therefore, they must rely on an authorizing statute or court rule for such authority. *City of Seattle v. McCready*, 124 Wn.2d 300, 309, 877 P.2d 686 (1994).[4] RCW 10.79.015 and CrRLJ 2.3(b) provide for the issuance of warrants to search for evidence of a *crime.* However, no statute or court rule has been cited by the parties to authorize the issuance of administrative search warrants supported by probable cause for *civil* infractions.[5]

In the case before us, although the affidavit for the warrant alleged probable cause to believe there were "violations of the Yakima County Code relating to nuisances, zoning and/or dangerous buildings," there was no allegation that those violations constituted a crime. CP at 49.

In his return memorandum to Judge Reukauf, Hargroves cited violations including illegally occupied recreational vehicles and campers, illegal burn barrels and trash, junk or inoperable vehicles and junk vehicle parts, and miscellaneous trash, debris, garbage and junk. These violations are all civil infractions.

■ The State has provided no valid legal basis for issuance of the initial search warrant. Consequently, the

---

[4] Although the *City of Seattle v. McCready* cases were not cited to either the Court of Appeals or this Court, we find them controlling.

[5] Several statutes authorize administrative inspection warrants. *See, e.g.*, RCW 15.09.070 (horticultural pests and diseases); RCW 15.17.190 (grade of fruits and vegetables); RCW 16.57.180 (livestock and hides); RCW 17.24.021 (plant and bee pests and diseases); RCW 19.94.260 (weights and measures); RCW 69.50.502 (pharmaceutical premises). No such statute is applicable to the circumstances of the instant case.

warrant must be quashed because the district court lacked the "authority of law" required by our constitution.

██ Drug evidence was found in plain view during the initial search. However, "an object in plain view cannot be seized on that basis alone, if it is 'situated on private premises to which access is not otherwise available for the seizing officer.'" *State v. Kennedy*, 107 Wn.2d 1, 10, 726 P.2d 445 (1986) (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)).

Because they were executing an invalid search warrant, the officers were not lawfully present on the Pence Road property. The plain view doctrine "does not apply to render lawful a seizure of evidence procured or brought into view by invasion of an accused's constitutional rights." *State v. Dennis*, 16 Wn. App. 417, 424, 558 P.2d 297 (1976). Such evidence is inadmissible against the defendant. *Id.*

## CONCLUSION

The motion to suppress the drug evidence found on the Pence Road property during the execution of the administrative search warrant was incorrectly denied. We reverse the Court of Appeals' ruling and remand the case to the trial court for dismissal of Lansden's conviction.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

Reconsideration denied January 11, 2002.