# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49724-7-II |
| Respondent, | |
| v. | |
| JUSTIN STONE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A jury convicted Justin Stone of three counts of possession of a controlled substance with intent to distribute for methamphetamine, hydrocodone, and oxycodone respectively, all with firearm and school bus route stop enhancements. It also convicted him of unlawful possession of a firearm and possession of a controlled substance for alprazolam. Stone appeals his convictions, arguing that the State elicited improper opinion testimony as to his guilt and that the resulting error was not harmless. He also contends he received ineffective assistance of counsel when his attorney did not object to several irrelevant pieces of evidence, his convictions violated his double jeopardy rights, and the trial court erred in assessing legal financial obligations (LFOs) and failing to recognize its discretion in sentencing him. Stone makes additional arguments in a statement of additional grounds (SAG).

We affirm Stone's convictions but remand for the trial court to review the assessment of LFOs in light of legislative changes.

FACTS

I.    INCIDENT

On December 4, 2015, Lakewood police executed a search warrant at Stone's Tacoma residence.  A Lakewood Municipal Court judge issued the warrant.  Police removed Stone from his home and placed him in custody before searching.  After Stone waived his *Miranda*[1] rights, Detective Sean Conlon asked Stone if he had methamphetamine in the residence.  Stone said the police would find approximately ten ounces of methamphetamine and a gun in a safe in his bedroom.  He told Conlon how to open it.  Stone said his methamphetamine supplier had given him the gun.  Stone admitted he had started selling methamphetamine to get out from under a debt to his supplier.  Police found $400 and the keys to the safe on Stone's person.

Consistent with Stone's statements, police found a safe in Stone's bedroom.  Inside, officers discovered methamphetamine, money, a loaded handgun, a BB gun, and documents showing that the safe belonged to Stone.  Officers also found four prescription bottles containing pills in the safe.  Two bottles had the labels removed and another had the name scratched off.  The bottles contained 49 hydrocodone tablets and more than 200 oxycodone tablets.

In Stone's bedroom, police found a ledger containing documented drug transactions, two digital scales, at least of one which had methamphetamine residue, packaging material, and surveillance equipment.  The ledger contained records of transactions and a list of merchandise.  A detective testified that such lists are consistent with a common practice where drug traffickers request specific items of merchandise so that drug users without a source of income may shoplift the requested items and exchange them for drugs.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Also in the bedroom, police found a wallet containing Stone's identification, a pill bottle with 13 grams of methamphetamine, ten alprazolam pills, and two OxyContin pills.

In total, police found 307-349 grams of methamphetamine, 10 alprazolam pills, 49 hydrocodone pills, and 230-250 oxycodone pills.

Stone's home was located within 1,000 feet of multiple school bus stops.

## II.    CRIMINAL CHARGES

The State charged Stone with four counts of possession of a controlled substance with intent to deliver, one each for methamphetamine, oxycodone, hydrocodone, and alprazolam, each with firearm[2] and school bus route stop[3] enhancements, and one count of unlawful possession of a firearm in the first degree.

Stone consulted with attorney Michael Schwartz but did not retain him. Schwartz then became a judge for the Pierce County Superior Court and presided over Stone's case for several pretrial and motion hearings. Schwartz denied Stone's motion to suppress physical evidence seized from his residence and his motion for a new attorney.

Stone's attorney raised this potential conflict issue regarding Schwartz at a motion hearing, and Schwartz asked whether he wanted another judge to hear the motion. Stone's attorney declined this offer.

Before the start of trial, the State raised the issue of Stone's consultation with Schwartz and requested that another judge review each motion on which Schwartz had ruled. Another judge had already reviewed and denied Stone's counsel's motion to withdraw and denied a motion to

---

[2] RCW 9.94A.533(3).

[3] RCW 9.94A.533(6); *see* RCW 69.50.435(1)(c).

suppress Stone's statements to police. The court heard arguments on the motion for a new attorney and the motion to suppress physical evidence and denied them both.

At trial, the State called numerous detectives from the Lakewood Police Department who executed the warrant at Stone's residence. Several officers testified as to their extensive training and experience in drug investigations and listed many items that drug dealers would be likely to possess and use, including many items that they found at Stone's residence.

One detective testified that, in his 15 years in the drug unit, he had never seen a user hold the quantity of methamphetamine found in Stone's home. He stated that the quantity of pills in the pill bottles was consistent with the amount a dealer would have on hand and that the lack of labels on the bottles was indicative of drug dealing. Another detective testified that the quantity and sizes of bags seized from Stone's bedroom, along with their placement near digital scales with methamphetamine residue, were "consistent with low-level narcotics trafficking." 3 Report of Proceedings (RP) at 345.

During Detective Jeff Martin's testimony, the prosecutor asked Martin whether he had "draw[n] a conclusion as to what the defendant was doing." 2 RP at 180. Stone objected and the prosecutor rephrased the question. "Given your numerous years of being involved in the narcotics division and your training and experience, the items you found in this home, based on that, did you draw a conclusion as to what the defendant was doing?" 2 RP at 181. Stone again objected on grounds that that would be "giving an opinion as to the ultimate question for this jury." 2 RP at 181. The court overruled the objection and Martin testified that, "based on the totality of the investigation, the items that [he] located, along with additional items that other officers/investigators located," he "concluded that Mr. Stone was in possession of narcotics with intent to distribute." 2 RP at 181.

Conlon testified immediately after Martin. The prosecutor asked Conlon, "Looking at what you had found inside the home and given what Mr. Stone had indicated to you in his statements, did you form an opinion as to what Mr. Stone was involved in?" 2 RP at 206. Conlon testified that, based on his "training and experience and what [police] had found there and [Stone's] own statements, that [Stone] was, in fact, selling methamphetamine." 2 RP at 206. Conlon also testified that the quantity of drugs found in Stone's home indicated to him that Stone was "a mid-level dealer of methamphetamine." 2 RP at 207. Stone did not object to this testimony.

The jury found Stone guilty of three counts of possession with intent to distribute for methamphetamine, hydrocodone, and oxycodone, each with firearm and school bus route stop enhancements. It also found him guilty of unlawful possession of a firearm in the first degree. The jury found Stone not guilty of possession of alprazolam with intent to distribute, but it found him guilty of the lesser included offense of possession of alprazolam.

The court sentenced Stone to a standard range sentence of 36 months flat time on each firearm enhancement, 24 months on each school bus route stop enhancement, concurrent to one another, and 116 months for unlawful possession of a firearm, totaling 248 months.[4] The parties agreed that the firearm enhancements would run consecutively to one another and consecutively to the rest of the time imposed.

The court imposed a $250 drug investigation fund, a $500 crime victim penalty assessment, a $100 deoxyribonucleic acid (DNA) database fee, and a $200 criminal filing fee, for a total of $1,050.

Stone appeals. The court signed an order of indigency for Stone's appeal.

---

[4] The sentences on the other substantive crimes were all shorter than 116 months and concurrent with the unlawful possession of a firearm sentence, so did not add to Stone's total time in custody.

ANALYSIS

I.    OPINION TESTIMONY

Stone contends that Martin and Conlon provided unlawful opinion testimony as to his guilt. The State concedes that Martin's opinion testimony as to Stone's guilt was improper, but contends that the error was harmless. It claims that, because Stone did not object to Conlon's testimony at trial, it is not preserved on appeal because it did not give rise to manifest constitutional error. We agree with the State.

We review decisions to admit evidence under an abuse of discretion standard. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). The trial court abuses its discretion on an evidentiary ruling if it is contrary to law. *Quaale*, 182 Wn.2d at 196.

A.    Conlon's Testimony

Stone contends that he preserved his challenge to Conlon's testimony by objecting to Martin's testimony. We disagree.

On appeal, a party may not raise an objection not properly preserved at trial absent manifest constitutional error. *State v. Chacon*, 192 Wn.2d 545, 547, 431 P.3d 477 (2018); RAP 2.5(a).

We "'are and should be reluctant to conclude that questioning, to which no objection was made at trial, gives rise to manifest constitutional error reviewable for the first time on appeal.'" *State v. Warren*, 134 Wn. App. 44, 56, 138 P.3d 1081 (2006) (quoting *State v. Madison*, 53 Wn. App. 754, 762, 770 P.2d 662 (1989)). In part, this rule prevents defense counsel from "'deliberately let[ting] error be created in the record, reasoning that while the harm at trial may not be too serious, the error may be very useful on appeal.'" *Warren*, 134 Wn. App. at 56 (quoting *Madison*, 53 Wn. App. at 763). "An issue is not preserved for appeal unless proper and

particularized objection was made at the time of the ruling." *State v. Thomas*, 150 Wn.2d 821, 869, 83 P.3d 970 (2004).

Stone objected to Martin's opinion testimony that he was "in possession of narcotics with intent to distribute" on the grounds that Martin would be giving an opinion as to the ultimate question for the jury. 2 RP at 181. The court overruled his objection. Stone did not make any objection to Conlon's testimony that, based on his "training and experience and what [police] had found there and [Stone's] own statements, that [Stone] was, in fact, selling methamphetamine." 2 RP at 206. Nor did he object to Conlon's opinion that the amount of drugs found at Stone's residence indicated that Stone was "a mid-level dealer of methamphetamine." 2 RP at 207.

Stone's earlier objection to Martin's testimony did not preserve his objection to Conlon's testimony.[5]

B.      Martin's Testimony

Stone contends and the State concedes that Martin provided improper opinion testimony as to Stone's guilt. We agree.

Opinions on guilt are improper when made directly or by reference. *Quaale*, 182 Wn.2d at 199. Impermissible opinion testimony as to guilt violates the defendant's right to a jury trial, which includes "the independent determination of the facts by the jury." *Quaale*, 182 Wn.2d at 199. Personal opinions as to the defendant's guilt, the intent of the accused, or the veracity of witnesses are "inappropriate for opinion testimony in criminal trials." *Quaale*, 182 Wn.2d at 200. Improper opinion testimony is also "more troubling if stated in conclusory terms parroting the

---

[5] Even if we were to consider this unpreserved challenge, Conlon testified only about Stone's methamphetamine dealing. Stone conceded at oral argument that any erroneously admitted testimony about his methamphetamine dealing was harmless and focused exclusively on Martin's opinion testimony as to Stone's dealing prescription pills.

legal standard." *State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008) (citing *City of Seattle v. Heatley*, 70 Wn. App. 573, 581, 854 P.2d 658 (1993)). Law enforcement opinion testimony is especially likely to influence the jury. *State v. Demery*, 144 Wn.2d 753, 762-63, 30 P.3d 1278 (2001).

Martin's opinion testimony that Stone was "in possession of narcotics with intent to distribute" went directly to the ultimate issue for the jury, and it parroted the legal standard. 2 RP at 181. This testimony was an improper opinion as to Stone's guilt. We accept the State's concession. We next consider whether this improper testimony was harmless.

C. Harmless Error

Stone conceded at oral argument that any error resulting from Martin's improper testimony was harmless as to his methamphetamine conviction. However, the parties dispute whether the error was harmless as to Stone's two convictions for possession of prescription pills with intent to distribute.

Improper opinion testimony as to a defendant's guilt violates a defendant's constitutional right to have a fact critical to his guilt determined by the jury. *Quaale*, 182 Wn.2d at 201-02. Admission of such testimony is constitutional error and we apply the constitutional harmless error standard to determine whether the error was harmless. *Quaale*, 182 Wn.2d at 202.

Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). We find the error harmless "only if convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (internal

8

citation omitted).   If the error was not harmless, the defendant must have a new trial.  *Easter*, 130 Wn.2d at 242.

A law enforcement officer's opinion testimony is "especially likely" to influence the jury. *Demery*, 144 Wn.2d at 762.  Additionally, improper opinion testimony is "more troubling if stated in conclusory terms parroting the legal standard." *Montgomery*, 163 Wn.2d at 594 (citing *Heatley*, 70 Wn. App. at 581).

Supporting Stone's convictions, the State presented a large quantity of methamphetamine and pills, money, a firearm, packaging, a ledger documenting drug transactions, including one for Percocet,[6] surveillance equipment installed at his home, and Stone's statements to police.  Police found the pill bottles in the safe with Stone's methamphetamine, guns, and other drug dealing paraphernalia, and the labels were scratched off two of the four bottles.   Witnesses testified that the quantities of pills in Stone's home were consistent with amounts a dealer would have and the lack of labels on the pill bottles was indicative of drug dealing.

Because the State presented overwhelming evidence of Stone's possession of hydrocodone and oxycodone with intent to distribute, we conclude that the improper opinion testimony as to his guilt was harmless.

II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Stone contends that his trial counsel was ineffective for failing to object to evidence that Stone possessed a BB gun and that he encouraged shoplifting.  He claims that this evidence was irrelevant and prejudicial and its admission prejudiced his case.  We disagree.

---

[6] Percocet is a brand name for oxycodone.  Prescriber's Digital Reference, Drug Information: Percocet, https://www.pdr.net/drug-information/percocet?druglabelid=2483.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33; *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842, (2018). Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 446 U.S. at 688). Prejudice exists if there is a reasonable probability that, except for counsel's errors, the results of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

A defendant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). "[E]xceptional deference must be given when evaluating counsel's strategic decisions." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002).

To prove that failure to object rendered counsel ineffective, a defendant must show "that not objecting fell below prevailing professional norms, that the proposed objection would likely have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." *Davis*, 152 Wn.2d at 714 (footnotes omitted). Accordingly, we look to the

merits of the underlying claim that the evidence was irrelevant and inadmissible. If that claim would have failed before the trial court, Stone's trial counsel was not deficient for failing to raise it and he cannot show prejudice as a result.

The threshold to admit relevant evidence is very low and even minimally relevant evidence is admissible. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

A.      BB Gun

Stone claims the admission of the BB gun prejudiced his case because people have strong reactions to such weapons and courts have "uniformly condemned" admission of unrelated and irrelevant firearms. Br. of Appellant at 24.

Irrelevant admission of guns may be prejudicial because "[p]ersonal reactions to the ownership of guns vary greatly," and "[m]any individuals view guns with great abhorrence and fear," while "others may consider certain weapons as acceptable but others as 'dangerous.'" *State v. Rupe*, 101 Wn.2d 664, 708, 683 P.2d 571 (1984). Evidence of dangerous weapons "'which have nothing to do with the crime charged'" is highly prejudicial. *State v. Freeburg*, 105 Wn. App. 492, 501, 20 P.3d 984 (2001) (quoting *United States v. Warledo*, 557 F.2d 721, 725 (10th Cir. 1977)).

A detective testified that police found a BB gun in Stone's safe, alongside the drugs, money, firearm, and documents. Officers testified that drug dealers frequently keep firearms near their drugs to protect them.

The BB gun was relevant to the State's arguments that weapons in proximity to Stone's drugs were indicative of drug dealing. Thus, if Stone's counsel had objected, the objection would have been overruled because the evidence was relevant. Stone is unable to show deficiency or prejudice and we reject his ineffective assistance of counsel claim.

B. Ledger

Evidence that a defendant committed prior crimes, wrongs, or acts "is inadmissible if it is offered to establish a person's character or to show he acted in conformity with that character." *State v. Lillard*, 122 Wn. App. 422, 430-31, 93 P.3d 969 (2004). However, such evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). "The true test for admissibility of unrelated crimes is not only if they fall into any specific exception, but if the evidence is relevant and necessary to prove an essential ingredient of the crime charged." *State v. Kidd*, 36 Wn. App. 503, 505, 674 P.2d 674 (1983).

In this case, the court admitted evidence of a ledger containing a list of drug transactions and a separate list of specific items of merchandise. A detective with experience and training in drug investigations testified that drug dealers often keep such lists because they obtain these items from customers in lieu of money. He testified that customers without money will then often shoplift these items and exchange them for drugs.

The evidence of the ledger in this case was not admitted for purposes of showing Stone's propensity to commit crimes or act in conformity with a criminal character. Rather, the State introduced the ledger as evidence that Stone not only possessed drugs, but sold them and exchanged them for merchandise. The ledger constituted relevant, substantive evidence about Stone's intent to distribute drugs, regardless of whether any shoplifting ever actually occurred. Had Stone's counsel objected, the objection would have been overruled because the evidence was relevant and its probative value outweighed any possible prejudicial effect. Stone is unable to show deficiency or prejudice and we reject his ineffective assistance of counsel claim.

III.   DOUBLE JEOPARDY

Stone contends that his three convictions for possession of a controlled substance with intent to deliver violate his double jeopardy rights.  He contends that this court should apply the "unit of prosecution" test and that a single unit of prosecution for dealing drugs is "based upon the 'nature of the defendant's intent,'" as opposed to whether he possessed different specific substances.  Br. of Appellant at 31 (quoting *State v. Gaworski*, 138 Wn. App. 141, 149, 156 P.3d 288 (2007)).  He claims we must reverse two of his three convictions for possession of a controlled substance with intent to distribute.[7]  We disagree.

"The United States Constitution provides that a person may not be subject 'for the same offense to be twice put in jeopardy of life or limb.'"  *State v. Chouap*, 170 Wn. App. 114, 122, 285 P.3d 138 (2012) (quoting U.S. CONST. amend V).  "Similarly, the Washington Constitution provides that a person may not be put in jeopardy twice for the same offense."  *Chouap*, 170 Wn. App. at 122 (citing WASH. CONST. art I, § 9).  Double jeopardy violations may be raised for the first time on appeal.  *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).  We review double jeopardy claims de novo.  *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010).

Where a defendant is convicted under multiple criminal statutes for a single act, we must determine whether the legislature intended multiple punishments.  *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007).  We first look to the statutory language.  *State v. Louis*, 155 Wn.2d 563, 569, 120 P.3d 936 (2005).  Where the language of the statutes are silent on

_____

[7] Stone cites to multiple cases that discuss when multiple counts constitute the "same criminal conduct" for sentencing purposes.  *See* Br. of Appellant at 30-31 (citing *State v. Vike*, 125 Wn.2d 407, 885 P.2d 824 (1994); *State v. Garza-Villarreal*, 123 Wn.2d 42, 864 P.2d 1378 (1993)).  These cases are inapplicable to our analysis of whether Stone's double jeopardy rights were violated because same criminal conduct is a distinct issue from double jeopardy.  The trial court in this case ruled that these three counts constituted the same criminal conduct at sentencing.

this point, we apply the "same evidence" test. *Louis*, 155 Wn.2d at 569; *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "Under the same evidence test, double jeopardy is deemed violated if a defendant is 'convicted of offenses that are identical both in fact and in law.'" *Louis*, 155 Wn.2d at 569 (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)).

When a defendant is "convicted for violating one statute multiple times, the same evidence test will *never* be satisfied." *Adel*, 136 Wn.2d at 633. Accordingly, in such situations, the proper inquiry is "what 'unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." *Adel*, 136 Wn.2d at 634. "When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." *Adel*, 136 Wn.2d at 634.

*State v. O'Neal*, 126 Wn. App. 395, 415, 109 P.3d 429 (2005), addressed which test should apply where the defendant is convicted of manufacturing two different controlled substances. The defendant argued that the "unit of prosecution" test should apply, citing a case that applied that test to determine whether two separate marijuana grow operations had the required "'separate and distinct'" intent to be separate units of prosecution. *O'Neal*, 126 Wn. App. at 416 (quoting *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 175, 12 P.3d 603 (2000)). The defendant pointed out that a single statute, RCW 69.50.401, prohibits "manufacture of 'a controlled substance'" without "specifying a particular substance." *O'Neal*, 126 Wn. App. at 415 (quoting RCW 69.50.401).

*O'Neal* distinguished *Davis* on the basis that the defendant had violated two different subsections of RCW 69.50.401 by manufacturing different substances. 126 Wn. App. at 416-17. Accordingly, it applied the "same evidence" test and concluded that double jeopardy was not

violated because the offenses were "neither identical in law nor in fact." *O'Neal*, 126 Wn. App. at 417.

Stone was convicted for possessing three different controlled substances with intent to distribute. Each count was charged as a violation of RCW 69.50.401, under two different subsections. Stone's methamphetamine count was charged as a violation of RCW 69.50.401(2)(b), while his hydrocodone and oxycodone counts were each charged as violations of RCW 69.50.401(2)(a)(i). As in *O'Neal*, we use the same evidence test where the convictions for possessing with intent to distribute different substances come under separate statutory subsections.

RCW 69.50.206 lists hydrocodone and oxycodone as two distinct schedule II substances under subsections (a)(1)(xi) and (a)(1)(xvi). Although Stone's convictions for distributing both of these substances were charged as violations of RCW 69.50.401(2)(a)(i), the State was required to prove different facts for each of these counts because it had to prove that Stone possessed different substances with intent to distribute each. Accordingly, we apply the "same evidence" test to determine whether Stone's hydrocodone and oxycodone convictions violated double jeopardy.

"Under the same evidence test, double jeopardy is deemed violated if a defendant is 'convicted of offenses that are identical both in fact and in law.'" *Louis*, 155 Wn.2d at 569 (quoting *Calle*, 125 Wn.2d at 777). "If each offense requires proof of an element not required in the other, where proof of one does not necessarily prove the other, the offenses are not the same and multiple convictions are permitted." *Louis*, 155 Wn.2d at 569.

Applying the same evidence test in this case, each count requires proof of an element that the other does not. Each count required the State to prove that Stone possessed and intended to deliver that specific substance. Stone's three convictions did not violate his double jeopardy rights.

IV.    SENTENCE

Stone raises two issues regarding his sentence.  He claims the trial court erred by failing to recognize its discretion to run the firearm enhancements concurrently as an exceptional downward sentence.  We disagree with this claim.  Stone also asserts that this court must reverse his LFO obligations in light of statutory amendments.  We agree with this assertion.

A.    Consecutive Firearm Enhancements

Stone contends that the trial court erred by imposing consecutive firearm sentencing enhancements without considering its authority to impose an exceptional concurrent sentence.  He also claims that his trial counsel was ineffective for failing to request a downward departure on the firearm sentencing enhancements.  We disagree.

In *State v. McFarland*, 189 Wn.2d 47, 50, 399 P.3d 1106 (2017), the primary case Stone relies on, all parties at trial agreed that firearm-related sentences had to run consecutively to one another pursuant to RCW 9.41.040(6) and 9.94A.589(1)(c).  The sentencing court stated that it did not have much discretion given that the firearm-related sentences had to run consecutively, and imposed the low end of the standard sentence range.  *McFarland*, 189 Wn.2d at 51. The defendant appealed, contending the trial court erred by not running her firearm-related sentences concurrently as an exceptional sentence on the mistaken belief it could not do so.  *McFarland*, 189 Wn.2d at 51.

*McFarland* ruled that sentencing courts have discretion to impose concurrent firearm-related sentences when the standard range consecutive sentence is "clearly excessive in light of the purpose" of the Sentencing Reform Act.  189 Wn.2d at 55.  It remanded for resentencing because the sentencing court "erroneously believed it could not impose concurrent sentences, and the record demonstrate[d] that it might have done so had it recognized its discretion."  *McFarland*,

189 Wn.2d at 56. This is because "every defendant is entitled to have an exceptional sentence actually considered" and the sentencing court errs when it "operates under the 'mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible.'" *McFarland*, 189 Wn.2d at 56 (quoting *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)).

In sentencing Stone, the court acknowledged the difficulties he had in life and expressed regret that Stone would not be there for his son. It expressed its frustration with Stone's dealing drugs and keeping a gun in proximity to his son and observed the impact drugs have on the community. The court noted that it "would like to have some more sympathy for Mr. Stone," but did not feel as though it could due to the damage drugs cause to the community. 4 RP at 539. Both parties and the court all agreed that the firearm enhancements would run consecutively. The court did not have any regret or misgivings about imposing a high-end standard range on Stone, for a total sentence of approximately 20 years.

Like *McFarland*, "defense counsel did not request and the sentencing court did not consider imposing an exceptional sentence downward." 189 Wn.2d at 51. *McFarland*, however, considered the court's discretion to run sentences for firearm crimes concurrently as an exceptional sentence. In this case, the record shows the trial court did not consider running the firearm enhancements concurrently. Also unlike *McFarland*, the court imposed a high-end standard range sentence and did not express any regret about the length of Stone's sentence. Nothing in the record in this case suggests that the court would have imposed an exceptional sentence downward. The trial court did not err.

The trial court's high-end standard range sentence suggests that, had Stone's trial counsel requested an exceptional sentence below the standard range through the imposition of concurrent

firearm enhancements, the trial court would likely have rejected it. We note that Stone's trial counsel requested a total sentence of 10 years flat time, which the court rejected. Because Stone cannot show deficiency or prejudice, we reject his ineffective assistance of counsel argument.

B.      Legal Financial Obligations

Stone contends that the sentencing court violated his constitutional rights by imposing LFOs despite his inability to pay. We need not decide the constitutional issue but agree the trial court must reevaluate the imposition of LFOs.

Since the parties filed their briefs in this case, the legislature amended the statutory LFO scheme. These amendments eliminated interest accrual on non-restitution LFOs, made the DNA database fee non-mandatory for offenders whose DNA had already been collected due to a prior conviction, and prohibited imposition of the $200 filing fee and discretionary LFOs on indigent defendants. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018); RCW 10.01.160(3); RCW 10.82.090(1); RCW 36.18.020(2)(h); RCW 43.43.7541. The amendments apply to cases that are not final on appeal, which includes this case. *Ramirez*, 191 Wn.2d at 748-49. In light of these legislative changes, we remand for the court to review Stone's LFOs.

STATEMENT OF ADDITIONAL GROUNDS

I.      SEARCH WARRANT JURISDICTION

Stone contends that the search warrant authorizing the search of his residence was invalid because the issuing court lacked jurisdiction. He claims that a judge from the Lakewood Municipal Court lacked jurisdiction to issue a warrant to search a residence in Tacoma.[8] A court's subject

---

[8] Stone also claims that the warrant erroneously listed a Lakewood address for his Tacoma home. Contrary to Stone's assertion, the warrant lists Tacoma as his address.

matter jurisdiction is reviewed de novo. *City of Medina v. Primm*, 160 Wn.2d 268, 273, 157 P.3d 379 (2007).

On appeal, a party may not raise an objection not properly preserved at trial absent manifest constitutional error. *Chacon*, 192 Wn.2d at 547. "The defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial. It is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). To determine whether Stone can show "actual prejudice," we consider the merits of his claim.

In Washington, "an 'absolutely necessary component of a valid warrant is that it be issued by a magistrate with the legal authority to issue it.'" *State v. Lansden*, 144 Wn.2d 654, 663, 30 P.3d 483 (2001) (quoting *City of Seattle v. McCready*, 123 Wn.2d 260, 272, 868 P.2d 134 (1994)).

Washington's courts of limited jurisdiction are created by the legislature and the legislature has sole authority to prescribe their jurisdiction and powers. *State v. Bliss*, 191 Wn. App. 903, 908, 365 P.3d 764 (2015). RCW 3.50.010 provides cities and towns with populations less than 400,000 with authority to establish inferior courts to be designated as "municipal courts."

State courts of limited jurisdiction "have no inherent authority to issue administrative search warrants" and must "rely on an authorizing statute or court rule for such authority." *Lansden*, 144 Wn.2d at 663. However, RCW 2.20.030 provides municipal judges with authority to issue warrants for "any person or evidence located anywhere within the state," so long as the offense is alleged to have occurred in the county in which the district or municipal court is located.

In this case, Conlon, a detective with the Lakewood Police Department, swore an affidavit of probable cause to a Lakewood Municipal Court judge. He swore that evidence of the crime of unlawful possession of a controlled substance with intent to deliver was located at Stone's address

in Tacoma. The affidavit noted it was sworn in Pierce County. The municipal judge then issued a search warrant for Stone's residence in Tacoma.

The Lakewood Municipal Court and Stone's residence were both in Pierce County. The court had jurisdiction to issue warrants for searches anywhere in the state, so long as the offense was alleged to have occurred in the county where the court sat. RCW 2.20.030. Because Stone was alleged to be dealing methamphetamine out of his residence in Pierce County, the Lakewood judge had authority to issue a search warrant for evidence of the offense. Accordingly, Stone cannot show actual prejudice and this issue does not present a "manifest constitutional error."

Stone also contends that he received ineffective assistance of counsel when his trial counsel did not challenge the validity of the search warrant. To the extent Stone refers to his argument that the municipal judge lacked jurisdiction to issue the warrant, his argument lacks merit, as discussed above. Because this argument lacks merit, Stone's trial counsel was not deficient for failing to make it and this failing did not prejudice Stone's case.

To the extent Stone contends his trial counsel was ineffective for failing to challenge his warrant more generally, Stone's trial counsel filed a motion to suppress evidence seized from Stone's residence and continued raising issues with the warrant and objecting to seized physical evidence through the second day of trial. We reject Stone's ineffective assistance of counsel claim.

II.    CONSULTATION WITH JUDGE

Stone contends that because he consulted with Judge Schwartz while the judge was in private practice and because the judge decided important motions in his case, error occurred. He claims that an unwaivable conflict existed and that the judge should have recused himself. Stone does not request any particular relief, but he claims this error "implicates the integrity of the criminal justice system." SAG at 3

20

Washington's appearance of fairness doctrine "not only requires a judge to be impartial, it also requires that the judge appear to be impartial." *Tatham v. Rogers*, 170 Wn. App. 76, 80, 283 P.3d 583 (2012). A "reasonable concern" of impartiality "can exist even where there is no proof of actual bias." *Tatham*, 170 Wn. App. at 81. Recusal decisions lie within the sound discretion of the trial court. *Tatham*, 170 Wn. App. at 87.

"A judicial proceeding satisfies the appearance of fairness doctrine only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing." *Tatham*, 170 Wn. App. at 96. However, "a litigant who proceeds to trial knowing of potential bias by the trial court waives his objection and cannot challenge the court's qualifications on appeal." *In re Welfare of Carpenter*, 21 Wn. App. 814, 820, 587 P.2d 588 (1978).

In this case, Judge Schwartz specifically asked if Stone would like a different judge to hear the motions at issue and he declined. Additionally, other superior court judges reviewed and affirmed each of Judge Schwartz's orders. Stone waived any error by declining to have a new judge hear his motions, and if had not, would be unable to show any prejudice due to these other judges' identical rulings. We deny Stone relief on this issue.

Stone also claims he received ineffective assistance of counsel for his trial counsel's failure to raise this issue. Each issue that Judge Schwartz ruled on before trial was subsequently reviewed and affirmed by another superior court judge. Stone has not shown prejudice and we reject his ineffective assistance of counsel claim.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Stone also contends he received ineffective assistance of counsel because his trial counsel failed to interview and call exculpatory witnesses.

21

Stone has neither named any witnesses nor stated what their testimony would have been. The record is inadequate to address this claim for relief. If Stone wishes this court to consider matters outside the record, a personal restraint petition is the appropriate vehicle for bringing those matters before the court. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

CONCLUSION

We affirm Stone's convictions, but we remand for the trial court to review Stone's LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, C.J.

Lee, J.